IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROCKY L. LACEY,

      *Plaintiff,*

  vs.          Case No. 6:13-cv-1418-EFM-KMH

OCWEN LOAN SERVICING, LLC, et al.,

      *Defendants.*

**MEMORANDUM AND ORDER**

  Plaintiff Rocky L. Lacey brought this *pro se* lawsuit against Ocwen Loan Servicing, LLC (Ocwen), GMAC Mortgage, LLC (GMAC), and The Bank of New York Mellon Trust Company, National Association alleging several statutory and tort violations while Ocwen and GMAC were servicing the note and mortgage held by The Bank of New York. The Defendants have moved for dismissal for failure to state a claim. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion to Dismiss (Doc. 26) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.  Factual and Procedural Background**

  Plaintiff sets out the following facts and allegations in his complaint. In 2003, Plaintiff Rocky L. Lacey executed a note that was secured by a mortgage on the property commonly described as 116 Blankenship Road, Udall, Kansas 67146. Initially GMAC serviced the mortgage. Plaintiff alleges in his complaint that Ocwen took over the servicing of the note and

mortgage in January 2011.[1] In December 2012, the note and mortgage were assigned to The Bank of New York.

Plaintiff alleges that after Ocwen took over the servicing of the note and mortgage, Ocwen informed Plaintiff that Ocwen intended to have a third-party inspection done at his property. Further, Ocwen informed Plaintiff that he would be responsible for payment of an inspection fee. Plaintiff agreed to pay this fee. After the initial inspection, Plaintiff alleges he began receiving notices from Ocwen that indicated that additional property inspections had been performed and that additional inspection fees would be assessed. Plaintiff immediately began protesting the fees. The inspection fees plus miscellaneous fees and interest totaled $3,300.

Plaintiff alleges that he continued to pay the principal and interest payments on his mortgage but refused to pay the disputed fees throughout the disputed time. Plaintiff also alleges Ocwen and GMAC misapplied his principal and interest payments to the disputed fees resulting in his mortgage being in default.

Plaintiff alleges to have sent qualified written requests regarding the servicing of the mortgage to both Ocwen and GMAC with no responses and no corrections to his account. Throughout 2013, Ocwen and GMAC sent Plaintiff notices of his default and alerted him to the possibility of foreclosure. Finally, Plaintiff alleges he has suffered emotional distress from the fear of losing his property, his credit rating has been damaged, and he has had to miss work due to dealing with this dispute.

Plaintiff's amended complaint includes the following six claims against Ocwen and GMAC: (1) violation of the Fair Debt Collection Practices Act (FDCPA), (2) violation of the Real Estate Settlement Procedures Act (RESPA), (3) breach of contract, (4) negligence, (5)

---

[1] The Court notes that letters attached to Lacey's original complaint indicate that the transfer to Ocwen became effective February 16, 2013. Doc. 1-2, at 36, 45.

intentional infliction of emotional distress, and (6) conspiracy to commit fraud.[2] Plaintiff also includes The Bank of New York in the breach of contract and negligence claims.

Defendants have filed a motion to dismiss.

## II.     Legal Standards

### A. Standard of Dismissal Under Rule 12(b)(6)

Under Rule 12(b)(6), the court must dismiss a complaint if the plaintiff has not pled sufficient facts to state a claim upon which relief may be granted.[3] In ruling on the motion, the court must accept all factual allegations as true.[4] However the court does not have to accept all conclusory statements as true.[5] The claim must state enough facts for the claim for relief to be plausible on its face.[6] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

---

[2] Plaintiff also alleges a separate cause of action for exemplary damages. As Defendant points out, exemplary damages are not a separate cause of action. *See Smith v. Printup*, 866 P.2d 985, 992 (Kan. 1993).

[3] FED. R. CIV. P. 12(b)(6).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[5] *Id*.

[6] *Id*. at 678.

[7] *Id*.

[8] *Id*.

their claims across the line from conceivable to plausible.'"[9] Mere conclusions or a "formulaic recitation of the elements of a cause of action will not do."[10]

### B. Pleading Standard for a Pro Se Litigant

A *pro se* plaintiff's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.[11] This rule means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. However, it is not the proper function of the district court to assume the role of advocate for the pro se litigant."[12]

### III. Analysis

**Count 1: Fair Debt Collection Practices Act**

The FDCPA was enacted to eliminate abusive debt collection practices.[13] To eliminate abusive debt collection practices the Act regulates interactions between consumer debtors and "debt collectors."[14] The FDCPA does not "prohibit a debt collector from merely attempting to collect on a debt. Nor are threats to take legal action or to report a debtor to credit agencies

---

[9] *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Id.*

[13] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010).

[14] *Id.*

actionable, unless the action threatened cannot legally be taken, is not intended to be taken, or involves the communication of false information."[15]

To present a claim under the FDCPA, the claimant must show the monetary obligation in dispute is a "debt" and that the entity collecting the debt is a "debt collector."[16] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[17]

The Act has multiple exceptions for the term "debt collector."[18] An entity that does not own the loan but merely "services" the loan is treated as a "creditor" and generally not subject to the FDCPA.[19] Additionally, a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.[20] A servicing company is subject to the FDCPA if the loan was in default at the time the servicing company acquired the loan account.[21]

Plaintiff fails to allege that Ocwen or GMAC were debt collectors. Instead, Plaintiff alleges that Ocwen and GMAC were servicers of the note. As servicers of the note, Ocwen and GMAC are not "debt collectors" unless they acquired the note when it was in default. Here, Plaintiff fails to allege that Ocwen or GMAC acquired the loan after it was in default. Thus,

---

[15] *Whayne v. United States Dep't of Educ.*, 915 F. Supp. 1143, 1145 (D. Kan. 1996).

[16] *Mondonedo v. Sallie Mae Inc.*, 2009 U.S. Dist. LEXIS 25497, at *8 (D. Kan. Mar. 25, 2009).

[17] 15 U.S.C.S. § 1692a(6).

[18] *Mondonedo*, 2009 U.S. Dist. LEXIS 25497, at *10.

[19] *Id.* at *11.

[20] 15 U.S.C.S. § 1692a(6)(F).; *See Mondonedo*, 2009 U.S. Dist. LEXIS 25497, at *11.

[21] *Id.*

Plaintiff fails to allege that Ocwen of GMAC are "debt collectors" and that is an essential element for a claim under the FDCPA. The FDCPA claim must be dismissed.

**Count II: Real Estate Settlement Procedures Act**

The RESPA provides a borrower a private action against a servicer of a loan for a failure to respond, an incomplete response, or an untimely response to a qualified written request related to the servicing of the loan made by the borrower.[22] A qualified written request is a written correspondence that includes the name of the account holder and a statement for the reasons for the belief that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.[23] The servicers must "make appropriate corrections in the account of the borrower" or conduct an "investigation" and provide either the requested information or appropriate information to the borrower within 30 days of the receipt of the qualified written request.[24]

To survive a Rule 12(b)(6) motion to dismiss a claim under § 2605(e) of the RESPA, plaintiffs must plead the RESPA violation and actual damages stemming from the failure to respond to requests or stemming from a pattern or practice of misconduct.[25] Actual damages include expended resources in preparing the requests and emotional distress from the failure to respond.[26]

Here, Plaintiff alleges sufficient facts to withstand a motion to dismiss. Plaintiff alleges that he sent qualified written requests to both Ocwen and GMAC. Furthermore, Plaintiff alleges

---

[22] 12 U.S.C.S. § 2605(e).

[23] *Id.*

[24] *Id.*

[25] *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013).

[26] *Price v. America's Sevicing Co.*, 403 B.R. 775, 793 (E.D. Ark. 2009).

that Ocwen and GMAC "did not make appropriate corrections to the account" and "did not provide a written explanation or clarification" to his inquiry. Plaintiff alleges he had actual damages of emotional distress. This is sufficient to satisfy the actual damage requirement.[27] Therefore, Plaintiff includes enough facts to plead each element of a RESPA cause of action that sufficiently put Ocwen and GMAC on notice. Thus, the motion to dismiss the RESPA cause of action is denied.

**Count III: Breach of Contract**

Under Kansas law, the plaintiff must allege: (1) the existence of a contract between the parties, (2) consideration, (3) plaintiff's performance or willingness to perform in compliance with the contract, (4) defendant's breach of the contract, and (5) damage to plaintiff from the breach.[28] Federal law does not require the plaintiff to recite the contract terms specifically or attach a copy of the contract.[29]

Here, Plaintiff alleges sufficient facts to withstand a motion to dismiss: (1) his note was a contract; (2) as consideration for the note, Plaintiff agreed to furnish a mortgage and pay interest on the principal; (3) plaintiff continued to pay the principal and interest payments in compliance with the note; (4) Ocwen, GMAC, and the Bank of New York breached the note and mortgage by applying erroneous fees and misapplying his principal and interest payments; and (5) as a result Plaintiff suffered emotional distress from the fear of losing his property.

The specific language of the contract does not need to be stated. The plaintiff sufficiently put the defendants on notice. Therefore, the motion to dismiss the breach of contract claim is denied.

---

[27] *Id.*

[28] *Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

[29] *CB Lodging, LLC v. i3tel, LLC*, 2008 U.S. Dist. LEXIS 85518, at *12 (D. Kan. Oct. 20, 2008).

**Count IV: Negligence**

To state a claim for negligence, Plaintiff must plead the existence of a duty, a breach of that duty, an injury, and a causal connection between the breach and the injury.[30] A duty may be established through contract or as a matter of law.[31] The traditional rule in Kansas is that lender-borrower relationship creates a debtor-creditor relationship, not a fiduciary relationship.[32] As a matter of law in Kansas, under the "debtor-creditor relationship[,] the creditor has no duty to police the loan outside of an explicit obligation created by contract."[33]

Here, Plaintiff only alleges that the Defendants occupied a "position of trust" and owed him a duty as a matter of law. Furthermore, Plaintiff alleges he entered into a lender-borrower relationship by obtaining the loan. The law is clear in Kansas that a lender-borrower relationship creates a debtor-creditor relationship. As a matter of law in Kansas, the debtor-creditor relationship does not recognize any specific obligations or duties imposed on the Defendants outside of those created by contract. Here, Plaintiff does not allege the duties owed to him were created by contract. Therefore, Plaintiff fails to plead an essential element of a negligence claim because there are no duties alleged by contract and no duties exist as a matter of law. Thus, the motion to dismiss the negligence claim must be granted.

**Count V: Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress (also known as outrage), the plaintiff must plead four elements: (1) the conduct of the defendant must be intentional or in

---

[30] *Smith v. Kansas Gas Serv. Co.*, 169 P.3d 1052, 1057 (Kan. 2007).

[31] *Daniels v. Army Nat. Bank*, 822 P.2d 39, 42 (Kan. 1991) (citing *Denison State Bank v. Madeira*, 640 P.2d 1235 (Kan. 1982)).

[32] *Daniels*, 822 P.2d at 42.

[33] *Boyd v. U.S. Bank Nat. Ass'n*, 2007 U.S. Dist. LEXIS 72455, at *47 (D. Kan. Sept. 26, 2007).

reckless disregard of the plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress must be extreme and severe.[34]

Here, Plaintiff alleges all the elements of emotional distress. First, Plaintiff alleges that Ocwen and GMAC acted intentionally in respect to the property inspections. Second, Plaintiff claims assessing the inspection fees was extreme and outrageous conduct. Third, Plaintiff alleges that he suffered severe emotional distress due to the large amount of the property inspection fees and the fear of foreclosure. Finally, Plaintiff alleges that his distress was severe by stating that he sustained "heart attack like symptoms."

In addition, a plaintiff claiming intentional infliction of emotional distress must meet two threshold requirements to survive a motion to dismiss.[35] The first question is whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery.[36] The second question is whether the plaintiff's emotional distress is so extreme and severe that no reasonable person should be expected to endure it.[37]

Plaintiff also alleges enough facts to pass the threshold questions. First, plaintiff quantifies the inspection fees as $3,300. This large sum could be seen as extreme and outrageous conduct in the eyes of a reasonable fact finder. Second, plaintiff states that he suffered emotional distress resulting in "heart attack like symptoms" which resulted in short-term hospital stays. A reasonable fact finder could see this distress as extreme and severe especially considering Plaintiff sought medical help.

---

[34] *Hoard v. Shawnee Mission Medical Ctr.*, 662 P.2d 1214, 1223 (Kan. 1983).

[35] *Rupp v. Purolator Courier Corp.*, 790 F. Supp. 1069, 1073 (D. Kan. 1992).

[36] *Id.*

[37] *Id.*

Thus, the motion to dismiss regarding the intentional infliction of emotional distress must be denied because Plaintiff alleged all the required elements of an intentional infliction of emotional distress claim. In addition, reasonable fact finders could differ as to whether the conduct was extreme and outrageous and the distress was extreme and severe.

**Count VI: Conspiracy to Commit Fraud**

**(A): Fraud**

To state a claim for fraud, the plaintiff must allege: (1) false or untrue representations were made as a statement of material fact; (2) the representations were known to be false or untrue by the party making them, or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damaged by relying upon the representations. [38]

Additionally, Federal Rule of Civil Procedure 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."[39] Following the "straightforward language" of Rule 9(b), the Tenth Circuit has held that "Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind."[40]

---

[38] *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 24938, at *4 (D. Kan. April 27, 2006).

[39] FED. R. CIV. P. 9(b).

[40] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citing *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986)).

Simply stated, Rule 9(b) requires plaintiff to set forth "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[41] The Court must read the requirements of Rule 9(b) in conjunction with Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice."[42]

Here, Plaintiff has insufficiently pled facts to meet the "particularity" pleading standard of Rule 9(b). Plaintiff alleges that Ocwen and GMAC committed fraud by "artificially inflat[ing] the balance due" on the loan by "fraudulently assessing in appropriate, illegal, and otherwise wrongful charge to the loan." However, Plaintiff offers no more detail as to the time, place, and contents of the fraud. The Plaintiff's complaint only makes conclusory statements about the fraud rather than statements of fact. Plaintiff does not meet the particularity standard of Rule 9(b). Furthermore, even if the Plaintiff sufficiently pled the time, place, and contents of the fraud, Plaintiff did not rely upon or act on the statements containing the "wrongful charges." In fact, Plaintiff immediately protested the charges and refused to pay. Thus, Plaintiff admits that he does not meet one of the elements of fraud. Therefore, the motion to dismiss regarding fraud is granted.

**(B): Conspiracy**

To state a claim for civil conspiracy, the plaintiff must allege: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds in the object or course of action; 4) one or more unlawful acts; and 5) damages as the proximate result thereof.[43] A "civil conspiracy is

---

[41] *Schwartz*, 124 F.3d at 1252.

[42] *Id.*

[43] *Balboa Threadworks, Inc.*, 2006 U.S. Dist. LEXIS 24938, at *8 (citing *Carson v. Lynch Multimedia Corp.*, 123 F. Supp .2d 1254, 1261 (D. Kan. 2000).

not actionable without the commission of a wrong giving rise to a cause of action independent of the conspiracy claim."[44]

There is no wrongful act independent of the conspiracy because Plaintiff failed to plead fraud with particularity and did not rely upon or act on the statements containing the charges. Therefore, the motion to dismiss the conspiracy claim must be granted.

In summary, Plaintiff's FDCPA, negligence, and conspiracy to commit fraud claims are dismissed. Plaintiff's RESPA, breach of contract, and intentional infliction of emotional distress claims survive this Rule 12(b)(6) motion for dismissal.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc.26) is hereby **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Dated this 25th day of June, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[44] *Carson*, 123 F. Supp. 2d at 1262.