# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROCKY L. LACEY,

    *Plaintiff,*

vs.

Case No. 13-CV-1418-EFM

OCWEN LOAN SERVICING, LLC, et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Rocky L. Lacey brings this *pro se* lawsuit against Defendants Ocwen Loan Servicing, LLC ("Ocwen"), GMAC Mortgage, LLC ("GMAC"), and The Bank of New York Mellon Trust Company, N.A. ("BONY") alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, breach of contract, and intentional infliction of emotional distress.  Before the Court are two motions:  Defendants' Motion for Summary Judgment (Doc. 68) and Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment (Doc. 74).  For the reasons stated below, the Court grants Defendants' motion and denies Plaintiff's motion.

### I. Factual and Procedural Background[1]

**The Loan and Mortgage**

On December 30, 2003, Plaintiff obtained financing through RBMG, Inc., to refinance the loan for his house located in Udall, Kansas. In connection with the refinancing, Plaintiff executed a note on December 30, 2003, in favor of lender RBMG in the amount of $69,400.00 (the "Loan"). Pertinent provisions of the Loan state as follows:

> 6 BORROWER'S FAILURE TO PAY AS REQUIRED
> (A)   Late Charge for Overdue Payments
> If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due [Plaintiff] will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of [Plaintiff's] overdue payment of principal and interest. [Plaintiff] will pay this late charge promptly but only once on each late payment.
>
> (B)   Default
> If [Plaintiff] do[es] not pay the full amount of each monthly payment on the date it is due [Plaintiff] will be in default.
>
> . . .
>
> (E) Payment of Note Holder's Costs and Expenses
> If the Note Holder has required [Plaintiff] to pay immediately in full as described above the Note Holder will have the right to be paid back by [Plaintiff] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.
>
> . . .
>
>   10 UNIFORM SECURED NOTE
> This Note is a uniform instrument with limited variations in some jurisdictions[.] In addition to the protections given to the Note Holder under this Note a Mortgage Deed of Trust or Security Deed (the Security Instrument) dated the same date as this Note protects the Note Holder from possible losses which

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

might result if [Plaintiff does] not keep the promises which [Plaintiff makes] in this Note. . . .[2]

On April 21, 2004, RBMG transferred the servicing rights to the Loan to GMAC, who in turn transferred the servicing rights to Ocwen on February 16, 2013.

In connection with the Note, Plaintiff executed a mortgage on December 30, 2003, in favor of RBMG (the "Mortgage"). Paragraph 9 of the Mortgage provides that:

> If . . . [Plaintiff] fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.[3]

Paragraph 14 of the Mortgage provides that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees."[4] On October 26, 2012, the Mortgage was assigned to BONY.

**Plaintiff's Loan Payments and Loan Modification Application**

From the inception of the Loan until June 2012, Plaintiff made timely loan payments. The last timely payment Plaintiff made was on June 18, 2012, for his June 2012 payment obligation. Plaintiff made late Loan payments from July 2012 through May 2013. As a result of these late payments, GMAC and/or Ocwen charged Plaintiff late fees, property inspection fees, and valuation fees. These fees were reasonable according to industry standards.

---

[2] Loan, Doc. 69-3, p. 17.

[3] Mortgage, Doc. 69-3, p. 27.

[4] *Id*. at p. 30.

In July 2012, Plaintiff applied for a loan modification. To receive a loan modification from GMAC, a borrower must provide all documents and information requested by GMAC. Plaintiff did not provide the requested documents and information. GMAC therefore denied his loan modification request on or about November 28, 2012.

Beginning on October 2, 2012, GMAC sent a Notice of Default to Plaintiff for the months of August 2012 through October 2012. The Notice of Default required Plaintiff to pay the full reinstatement amount of $2,555.47 within thirty-five days to avoid foreclosure. Plaintiff did not pay this reinstatement amount within the thirty-five day time period or otherwise. Under the terms of the Loan documents, Defendants were entitled to commence foreclosure proceedings relating to the Property due to Plaintiff's default and failure to pay the reinstatement amount.

On May 6, 2013, Ocwen sent another Notice of Default to Plaintiff, stating that Plaintiff must pay the reinstatement amount within thirty-five days to avoid foreclosure. Plaintiff did not pay this amount within the thirty-five day time period or otherwise. Ocwen sent two more Notices of Default to Plaintiff on June 7, 2013, and July 12, 2013, respectively. Plaintiff did not pay the reinstatement amount under either of these Notices as well.

Plaintiff made his last Loan payment in August 2013, when he paid his May 2013 Loan Payment. On October 30, 2013, and November 29, 2013, Plaintiff made payments of $800 each on the Loan. These payments, however, were returned by Ocwen to Plaintiff because they were less than the reinstatement amounts stated in the Notices of Default and because they constituted partial payments.

Plaintiff has not made a payment on the Loan since August 2013 when he paid his May 2013 Loan payment. The principal balance of the Loan as of December 3, 2014, was $58,065.20.

**Plaintiff's Qualified Written Requests**

In February 2013, Plaintiff sent a Qualified Written Request to GMAC. GMAC responded to Plaintiff's request on March 6, 2013. GMAC's response to Plaintiff's Qualified Written Request validated Plaintiff's debt, provided a copy of the Loan and payment history, identified the Loan owner and holder, provided a breakdown of the amount due, and provided the name and telephone number of an individual who could assist Plaintiff.

Plaintiff also submitted a Qualified Written Request to Ocwen on October 11, 2013. Ocwen responded to the request on December 4, 2014. The response validated Plaintiff's debt, provided a copy of the Loan, Assignment, and payment history, identified the Loan owner and holder, provided a breakdown of the amount due, stated that all fees and costs associated with the Loan were assessed in accordance with the terms of the Loan documents, and provided the name and telephone number of an individual who could assist Plaintiff. At his deposition, Plaintiff testified that he had not read the response and did not know if it was accurate.

**Plaintiff's Lawsuit**

Plaintiff filed this suit *pro se* on October 18, 2013, in Cowley County District Court asserting claims for breach of contract and fraud. Defendants removed the case to this Court on November 6, 2013. On February 4, 2014, Plaintiff filed an Amended Complaint alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), violations of RESPA, breach of contract, negligence, intentional infliction of emotional distress, and conspiracy to defraud. On February 28, 2014, Defendants filed a Motion to Dismiss Plaintiff's claims, which the Court

granted in part and denied in part. The Court dismissed Plaintiff's claims for violation of the FDCPA, negligence, and conspiracy to defraud but allowed Plaintiff's claims for violations of RESPA, breach of contract, and intentional infliction of emotional distress to proceed.

On January 23, 2015, Defendants filed a Motion for Summary Judgment with regard to Plaintiff's remaining claims. Plaintiff then filed a Motion to Deny Defendants' Motion for Summary Judgment. Both motions have been briefed by the parties and are ripe for the Court's decision.

### III.     Analysis

**A.     Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment (Doc. 74)**

Plaintiff asks the Court to dismiss Defendants' Summary Judgment Motion as untimely because it was filed thirty-one days after the close of discovery. Plaintiff's argument, however, ignores D. Kan. Rule 16.2(b) regarding the effect of the Pretrial Order. That rule provides:

> **(b) Effect of Pretrial Order**. The pretrial order, when approved by the court and filed with the clerk, together with any memorandum entered by the court at the conclusion of the pretrial conference, will control the subsequent course of the action unless modified by consent of the parties and court, or by an order of the court to prevent manifest injustice.[5]

The Pretrial Order entered in this case states that dispositive motions shall be filed by January 23, 2015. Defendants filed their Motion for Summary Judgment on January 23, 2015. Therefore, their motion was timely filed. Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment is denied.

---

[5] D. Kan. R. 16.2(b).

B.     **Defendants' Motion for Summary Judgment (Doc. 68)**

**Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[8] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[11] Finally, although Plaintiff is *pro se*, and the Court must afford

---

[6] Fed. R. Civ. P. 56(c).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[9] *Id.* (citing Fed. R. Civ. P. 56(e)).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

him some leniency in his filings,[12] he is still expected to "follow the same rules of procedure that govern other litigants."[13]

**Analysis**

Plaintiff has three remaining claims against Defendants: (1) violation of RESPA; (2) breach of contract; and (3) intentional infliction of emotional distress. Defendants contend that they are entitled to summary judgment because Plaintiff lacks evidence on an essential element of each of these claims. The Court will address each claim below.

### 1. RESPA

Plaintiff argues that Defendants are liable under RESPA because GMAC and Ocwen failed to provide a complete written explanation in response to Plaintiff's two qualified written requests and failed to make appropriate corrections to Plaintiff's account. RESPA is a "consumer protection statute enacted to regulate real estate settlement processes."[14] It provides a borrower a private action against a loan servicer for failing to respond, providing an incomplete response, or providing an untimely response to a qualified written request related to the servicing of the loan made by the borrower.[15] A qualified written request is written correspondence from the borrower that includes the name and account of the borrower, a statement of reasons for why the borrower believes the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.[16] After receiving a qualified written request, the

---

[12] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[13] *Id*.

[14] *Berneike v. CitiMortgage, Inc*., 708 F.3d 1141, 1145 (10th Cir. 2013) (citing 12 U.S.C. § 2601).

[15] 12 U.S.C. § 2605(e)-(f).

[16] *Id*. § 2605(e)(1)(B).

servicer must make appropriate corrections in the borrower's account or conduct an investigation and provide either the requested information or appropriate information to the borrower within thirty days of receiving the qualified written request.[17]

To recover on a RESPA claim, a borrower must plead actual damages stemming from a failure to respond to the written requests or resulting from a pattern or practice of misconduct.[18] In terms of actual damages, RESPA states that the failure to comply with its provision creates liability for "an amount equal to . . . any actual damages to the borrower as a result of the failure."[19]

Defendants assert two arguments as to why they are entitled to summary judgment on this claim. First, they argue that GMAC and Ocwen provided a complete response to Plaintiff's two qualified written requests, and there are no facts to support Plaintiff's allegation that GMAC and Ocwen did not make appropriate corrections to Plaintiff's account. In response, Plaintiff admits that GMAC and Ocwen responded to each of his requests and does not indicate that these responses were incomplete. Instead, Plaintiff only argues that Defendants failed to make appropriate corrections to his account. Therefore, the Court will focus solely on this argument on summary judgment.

Generally, Plaintiff claims that GMAC and Ocwen failed to properly apply four payments he made on the Loan in December 2012, January 2013, October 2013, and November 2013. In making this argument, Plaintiff relies on an affidavit from his wife, Virginia Lacey.

---

[17] *Id*. § 2605(e)(2).

[18] *Toone v. Wells Fargo Bank, N.A*., 716 F.3d 516, 523 (10th Cir. 2013) (citing *Hintz v. JPMorgan Chase Bank, N.A*., 686 F.3d 505, 510-11 (8th Cir. 2012)).

[19] 12 U.S.C. § 2605(f)(1)(A).

The affidavit provides that Plaintiff and Virginia Lacey received a notice in November 2012 stating that Plaintiff must pay $2,000 to bring the Loan current, and in response to this notice, she submitted two $1,000 payments, in December 2012 and January 2013, respectively, in addition to her normal payment. The affidavit further provides that she never received anything showing that these payments were applied to cover the past due balance, and none of the information provided by GMAC or Ocwen in response to her qualified written requests established the payments were applied. Virginia Lacey also states that she submitted two additional payments in October and November of 2013 that were initially returned but were later cashed by Ocwen after she resubmitted them. According to Virginia Lacey, these payments were also never applied to Plaintiff's account, were never recognized on the Loan statements, and additional fees and charges have continued to mount against them.

The Court finds that Virginia Lacey's affidavit, by itself, cannot create a genuine issue of material fact. In evaluating a summary judgment motion, the court examines affidavits "based on personal knowledge and set[ing] forth facts that would be admissible in evidence," but does not consider "conclusory and self-serving affidavits."[20] Virginia Lacey's testimony is clearly self-serving, as she has a personal interest in the outcome of this case. She is married to Plaintiff, resides at the house that is subject to the Mortgage, and previously moved to be added as a party to this action. Moreover, her affidavit contains no documentation supporting her factual assertions, such as the November 2012 notice, bank statements, or checks, while Defendants have submitted evidence showing that such payments were never made or received. Defendants have provided Plaintiff's payment history with GMAC to show that GMAC never

---

[20] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) (citation omitted).

received the two $1,000 checks. It has also provided letters from Ocwen to Plaintiff, each with an $800 check, to show that the October and November 2013 payments were returned.[21] Plaintiff has not come forward with any evidence showing that it later resubmitted these $800 checks or that they were cashed by Ocwen.

Virginia Lacey's affidavit is further discounted by the fact that it contradicts the Pretrial Order. The pretrial order " 'measures the dimensions of the lawsuit both in the trial court and on appeal.' "[22] It controls the subsequent course of action in a case, unless it is modified by a subsequent order.[23] Therefore, "[f]or purposes of summary judgment, . . . the pretrial order coupled with the governing law establish the quantum of evidence required" for a party to survive such a motion.[24]

Plaintiff stipulated in the Pretrial Order that he made late loan payments from July 2012 through May 2013 and that this caused him to be charged late fees. He also stipulated that his last payment on the Loan was in August 2013. Virginia Lacey's statements about the four additional loan payments are belied by the very facts Plaintiff stipulated to in the Pretrial Order. Plaintiff has neither objected to nor moved to amend the Pretrial Order and therefore cannot escape these stipulations through his wife's self-serving affidavit.

The uncontroverted facts show there were no errors in Plaintiff's account. Plaintiff admitted that his late loan payments from July 2012 through May 2013 caused him to be charged

---

[21] Plaintiff does not state the amount of his October and November 2013 payments to Ocwen, but given the factual allegations set forth in Virginia Lacey's affidavit and Defendants' evidence, the Court assumes that they were for $800.

[22] *Koch v. Koch Indus., Inc*., 203 F.3d 1202, 1212 (10th Cir. 2000) (quoting *Air-Exec Inc. v. Two Jacks, Inc.*, 584 F.2d 942, 944 (10th Cir. 1978).

[23] Fed. R. Civ. P. 16(e).

[24] *Koch*, 203 F.3d at 1212.

late fees.  Plaintiff also does not dispute that he was charged property inspection fees and valuation fees because of his late payments.  These fees and charges were authorized by the Loan and reasonable.  Furthermore, Plaintiff has not provided sufficient evidence controverting the fact that neither GMAC nor Ocwen misapplied payments or misrepresented the amounts due under the Loan.  Thus, neither GMAC nor Ocwen violated RESPA by failing to make appropriate corrections to Plaintiff's account.

Defendants' second argument as to why they are entitled to summary judgment is that Plaintiff has not shown that he suffered actual damages as a result of Defendants' alleged RESPA violation.  In response, Plaintiff argues that he can establish actual damages as a result of the fees and expenses that were inaccurately applied to his account and because of the inaccurate reinstatement and payoff quotes.  Plaintiff, however, has not come forward with any evidence showing that he actually paid these fees and expenses.  Plaintiff has therefore failed to show a genuine issue of material fact regarding any harm he suffered as a result of Defendants' alleged violations.

Plaintiff has not met his burden on summary judgment to show a genuine issue of material fact regarding his RESPA claim.  Plaintiff has not submitted sufficient evidence showing that Defendants failed to make appropriate corrections to his account or that he suffered actual damages as a result of the alleged violations.  Therefore, the Court grants Defendants' motion for summary judgment on this claim.

### b. Breach of Contract

A federal court sitting in diversity must apply the choice of law rules of the forum state.[25] Defendants point to Kansas law as the applicable state law governing this case, and Plaintiff does not address the issue. Neither party directs the Court to any choice of law provision in the Loan or Mortgage, so the Court will presume Kansas law is applicable for purposes of this motion. Under Kansas law, the elements of a breach of contract claim are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of contract; and (5) damages to plaintiff caused by the breach."[26]

Defendants argue that they are entitled to summary judgment because Plaintiff cannot prove the third, fourth, and fifth elements of his claim. Defendants first contend that Plaintiff has failed to provide evidence of his performance under the Loan. Plaintiff does not address this issue in his response to Defendants' motion for summary judgment. Regardless, the undisputed facts show that Plaintiff has not met his Loan obligations. Plaintiff stipulated that he made late payments from July 2012 to May 2013 and that he has not made a payment on the loan since August 2013. These are express breaches of the Loan. It is also uncontroverted that Defendants sent four Notices of Default to Plaintiff and that Plaintiff failed to pay the reinstatement amount each time. Taken together, these facts demonstrate that Plaintiff failed to perform under the Loan, and thus, his breach of contract claim fails.

---

[25] *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[26] *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083, 1098 (2013).

Defendants also assert that Plaintiff cannot establish the fourth element of his claim—breach of the Loan documents. Plaintiff contends that Defendants breached the Loan documents by failing to accurately apply payments to his account and by failing to accurately state the balances resulting in unauthorized fees. Plaintiff also contends that Defendant "initiated and intended to complete" foreclosure actions and that Defendants' stated causes for foreclosure were based on its erroneous belief that Plaintiff had not made certain payments on the Loan that he actually paid.

The main issue here is whether Virginia Lacey's affidavit is sufficient to create a genuine issue of material fact with regard to Defendants' alleged breaches. Once again, the Court finds that it is not. Plaintiff cannot rely on a self-serving affidavit that is unsupported by any documentation in the record. Furthermore, Defendants have come forward with more than enough evidence to show that they never received the two $1,000 payments Plaintiff claims he made in December 2012 and January 2013 and that the $800 payments Plaintiff made in October and November 2013 were returned. Finally, Plaintiff stipulated in the Pretrial Order that he made regular late payments under the Loan and that he was charged late fees as a result of these late payments. Thus, the fees Defendants charged Plaintiff certainly were not unauthorized by the Loan and do not constitute a breach.

Defendants' final argument as to Plaintiff's breach of contract claim is that Plaintiff cannot prove he suffered damages as a result of Defendants' alleged breach. Plaintiff claims he suffered "mental, physical, financial and other harms" because of Defendants' alleged breaches. Having already found that Plaintiff has not met his burden with regard to two elements of his breach of contract claim, the Court declines to address this element. Accordingly, the Court grants summary judgment for Defendants on Plaintiff's claim.

### 3. Intentional Infliction of Emotional Distress

Plaintiff alleges a cause of action for intentional infliction of emotional distress based on Defendants' alleged foreclosure actions. To establish a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the defendant's conduct "was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."[27]

For a plaintiff's claim to survive summary judgment, the court must determine: "(1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it."[28] Conduct is not extreme and outrageous unless it is regarded as being "beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society."[29] These threshold requirements are "necessarily high to separate meritorious claims from those based on trivialities or hyperbole."[30]

Kansas courts have held that creditors may take reasonable action to pursue their debtors and persuade payment, but conduct that exceeds the bounds of reasonableness may give rise for an action in tort.[31] Plaintiff testified in his deposition that his alleged emotional distress began

---

[27] *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257, 978 P.2d 922, 930 (1999).

[28] *Roberts v. Saylor*, 230 Kan. 289, 292-93, 637 P.2d 1175, 1179 (1981).

[29] *Fusaro v. First Family Mortg. Corp.*, 257 Kan. 794, 805, 897 P.2d 123, 131 (1995) (citation omitted).

[30] *Rupp v. Purolator Courier Corp.*, 790 F. Supp. 1069, 1073 (D. Kan. 1992).

[31] *Dawson v. Assocs. Fin. Servs. Co. of Kan., Inc*., 215 Kan. 814, 821, 529 P.2d 104, 110-111 (1974); *see also Caputo v. Prof. Recovery Servs., Inc.*, 261 F. Supp. 2d 1249, 1265 (D. Kan. 2003) ("The Kansas Supreme Court

when he received a notice of potential foreclosure on his property in October 2012. Plaintiff also testified that the prospect of losing his home is the basis for his alleged distress. Plaintiff has stipulated, however, that he made late payments for over ten months, that he has not made any payments since August 2013, and that he never made any reinstatement payment. The terms of the Loan allow Defendants to begin foreclosure proceedings on Plaintiff's property as a result of his failure to pay the reinstatement amount. In addition, Plaintiff's application for a loan modification was denied because of his failure to provide the necessary documents and information to GMAC. The cause of Plaintiff's emotional distress does not appear to be more than a typical residential foreclosure scenario. Plaintiff has not come forward with any evidence that Defendants' conduct was extreme or outrageous, let alone that his emotional distress was severe. Thus, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 68) is **GRANTED**.

---

has recognized that . . . creditors must be given some latitude to pursue reasonable methods of collecting debts even though such methods often might result in some inconvenience or embarrassment to the debtor." (citations omitted)).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment and Memorandum in Support (Doc. 74) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 22nd day of September, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE